227 So.2d 293 (1969)
HOME OWNERS INSURANCE COMPANY
v.
KEITH'S BREEDER FARMS, INC.
No. 45428.
Supreme Court of Mississippi.
October 20, 1969.
Watkins & Eager, William E. Suddath, Jackson, for appellant.
Mitchell, McNutt & Bush, Tupelo, for appellee.
*294 ROBERTSON, Justice.
The appellee, Keith's Breeder Farms, Inc., recovered a judgment for $3,066.77 against the appellant, Home Owners Insurance Company, in the Circuit Court of Lee County, Mississippi. The windstorm damage to Poultry House Number 1 amounted to $966.30, while the damage to 150 hen nests, which had been temporarily moved outside of Poultry House Number 1 so that the poultry house and nests could be more effectively cleaned and disinfected, was $2,100.47.
Appellant contended in the lower court, and now argues in this Court, that because the hen nests were outside the poultry house, they were not covered under the terms of the fire and extended coverage policy which the appellant had written for the appellee.
The contract of insurance provided:

 "Item No. Amount, etc. DESCRIPTION AND LOCATION
 OF PROPERTY COVERED.
 1. $20,000.00 On the frame, metal roof
 unheated Poultry House No.
 1, situated W/S Highway No.
 371, approximately 6 miles
 South from Mooreville, Lee
 County, Mississippi.
 2. $10,000.00 On Equipment & Supplies
 contained in the above-described
 Poultry House
 No. 1.

... .
"In consideration of the provisions and stipulations herein or added hereto and of the premium above specified, this Company... does insure the insured ... against all direct loss ... to the property described herein while located or contained as described in this policy ... but not elsewhere." (Emphasis added).
The annual premium for fire and lightning coverage was $329 and for windstorm and extended coverage was $178.
Keith testified that it was customary in the poultry business to thoroughly clean and disinfect the poultry house and nests once a year; that it was customary and necessary to move the nests outside for proper cleaning, scrubbing and disinfecting. He stated that he had never seen a poultry house cleaned without moving the equipment outside; that Poultry House Number 1 had a dirt floor; that it was necessary to get the hen nests out of the poultry house so that the dirt floor could be thoroughly and completely scraped and an end-loader and wagon used to remove the manure. Neither the floor nor the nests can be properly cleaned or disinfected if the nests remain inside the poultry house.
Keith testified that he had just sold the complete flock of hens and that the nests had been outside the poultry house about a week. The testimony was that it would take anywhere from two to six weeks to properly clean, scrub and disinfect the hen nests, that the period varied with the labor supply. The nests were stacked against Poultry House Number 1 where they would be readily available for cleaning and disinfecting and then moving back into the poultry house.
*295 The Shuford and McKinnon Insurance Agency of Jackson, Mississippi, issued this policy of insurance, and Mr. Stanley McKinnon testified that they had been writing this type of insurance since 1955, and that they were probably the largest insurer of this type of risk in Mississippi. Mr. Keith wanted the broadest coverage and fullest protection available, and Mr. McKinnon wrote the policy with these objectives in mind. There was no other way that the coverage could be written, according to Mr. McKinnon.
Moving the hen nests outside for periodic and customary cleaning was not mentioned by Mr. Keith to Mr. McKinnon, nor was it discussed by Mr. McKinnon with Mr. Keith.
Mr. McKinnon was asked this question: "Were you aware at the time that it was a custom of the industry to clean hen houses?" which he answered in this way: "Well, I guess I would have realized if I had thought about it that they would have to clean them, but I never had given any thought as to the specific manner that each one would do it."
In Item Number 1 of the policy, Poultry House Number 1 is described as being located on the west side of Highway Number 371 approximately six miles south of Mooreville, Lee County, Mississippi. Item Number 2 refers to the "Equipment and Supplies contained in the above-described Poultry House No. 1." It is, of course, necessary to refer back to Item Number 1 in order to determine the "Description and Location of Property Covered." The hen nests were stacked against Poultry House Number 1 as it was located on the west side of Highway 371.
It was a custom of long standing in the poultry business to periodically move hen nests and other equipment out of the poultry house for proper cleaning and disinfecting of both the poultry house and the equipment. This was a temporary move only; the nests remained outside only as long as it was absolutely necessary to clean, scrub and disinfect them. After all, Mr. Keith was in the sole business of producing hen eggs for the consumer market. When the nests were not in use by the hens, Mr. Keith had no income. It behooved him to promptly clean the nests and move them back inside so the hens could go to work and produce. Good business required this.
It would be a strained and tortuous construction indeed if for two or three weeks of each year while the nests were outside purely and simply for cleaning, scrubbing and disinfecting that there would be no coverage, but that immediately when this necessary periodical cleaning was completed and the nests were moved back inside the poultry house, that the coverage would be automatically reinstated. In our opinion, neither the insurer nor the insured intended for this to be the case.
We think the language of the policy was clear and unambiguous when construed in the context of the nature and long-continued customs of the poultry business, but even if it were not, the insurer could gain no comfort from indefinite, uncertain and ambiguous language because the rule is that any ambiguity in the language of the policy will be construed more strictly against the writer of the policy.
This rule was well and succinctly stated in Caldwell v. Hartford Accident and Indemnity Co., 248 Miss. 767, 160 So.2d 209 (1964):
"The rule that the insurance policy prepared by the insurer must be construed more strongly against the insurance company, and that any fair doubt should be resolved in favor of the insured, is so well-settled in the law of insurance that we hesitate to cite any cases. See Penn v. Commercial Union Fire Insurance Company of New York, 233 Miss. 178, 101 So.2d 535, 67 A.L.R.2d 1238. It is equally well-settled that when the provisions *296 of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail. Penn v. Commercial Union Fire Insurance Company of New York, supra." Id. at 776-777, 160 So.2d at 212-213. (Emphasis added).
There is another closely related rule of construction that could bear on this case, and that is that conditions, exceptions and limitations on coverage contained in a policy of insurance that are not clearly expressed will be construed more strictly against the insurer as the framer and fashioner of these provisions. Griffin v. Maryland Cas. Co., 213 Miss. 624, 57 So.2d 486 (1952). 43 Am.Jur.2d Insurance § 279 page 340 (1969).
There is still a third rule of construction that could be applied in this case, and that is that the temporary removal of property from its usual place of storage for cleaning or repairing will not affect the coverage while the porperty is thus temporarily away from its designated location. 44 C.J.S. Insurance § 322 page 1254 (1945).
Of course, our holding is that these hen nests were not away from their designated location, but even if they were, we feel that it was, or certainly should have been, within the contemplation of the parties to this contract of insurance that the poultry house and nests would be periodically cleaned and disinfected in the customary manner, and that this certainly would not cancel the coverage of the policy while the nests were temporarily away from their usual location for the sole purpose of being cleaned, scrubbed and disinfected. The circuit court construed the language of the policy correctly, and its judgment will be affirmed.
Affirmed.
GILLESPIE, P.J., and PATTERSON, INZER and SMITH, JJ., concur.